**KESSLER TOPAZ
MELTZER & CHECK, LLP**
Jennifer L. Joost (Bar No. 296164)
jjoost@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

-and-

**KESSLER TOPAZ
MELTZER & CHECK, LLP**
Melissa L. Yeates (*pro hac vice* forthcoming)
myeates@ktmc.com
Tyler S. Graden (*pro hac vice* forthcoming)
tgraden@ktmc.com
Jordan E. Jacobson (Bar No. 302543)
jjacobson@ktmc.com
Daniel S. Dicce (*pro hac vice* forthcoming)
ddicce@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| ANDREW KANG and BETTY CHEN, individually and on behalf of all others similarly situated, | Case No. 26-cv-2503 |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| META PLATFORMS, INC., META PLATFORMS TECHNOLOGIES, LLC, SAMASOURCE IMPACT SOURCING INC. d/b/a SAMA, and LUXOTTICA OF AMERICA, INC., | |
| Defendants. | |

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................ 1

II.     JURISDICTION AND VENUE ................................................................................. 3

III.    DIVISIONAL ASSIGNMENT ................................................................................. 4

IV.     PARTIES .................................................................................................................... 4

        A.      Plaintiffs ......................................................................................................... 4

        B.      Defendants ...................................................................................................... 5

V.      FACTUAL ALLEGATIONS .................................................................................... 6

        A.      Meta AI Glasses ............................................................................................. 6

        B.      Meta AI Glasses Intercept, Transmit, Record, and Divulge Highly Sensitive
                Communications Without Wearers' or Bystanders' Knowledge or Consent ............. 8

        C.      Overseas Third-Party Human Data Annotators Review Highly Sensitive
                Communications Captured by Meta AI Glasses .......................................................... 9

        D.      Defendants Tout Meta AI Glasses' Purported Privacy Features While
                Concealing Their Unconsented to Intrusive Recording, Human Review,
                and Use for AI Training ................................................................................... 11

        E.      The Meta AI Glasses' Recording, Interception, Third Party Communication
                Sharing, and AI Training Practices are Egregious Breaches of Social Norms
                and of Plaintiffs' and Class Members' Privacy Rights .......................................... 13

VI.     TOLLING OF THE STATUTE OF LIMITATIONS ............................................. 14

        A.      Discovery Rule Tolling ................................................................................. 14

        B.      Fraudulent Concealment Tolling .................................................................. 14

        C.      Estoppel ........................................................................................................ 14

VII.    CLASS ACTION ALLEGATIONS ......................................................................... 15

VIII.   CLAIMS FOR RELIEF ........................................................................................... 19

IX.     PRAYER FOR RELIEF ........................................................................................... 47

X.      DEMAND FOR JURY TRIAL ................................................................................ 48

Plaintiff Andrew Kang ("Plaintiff Kang") and Betty Chen ("Plaintiff Chen" collectively, "Plaintiffs"), bring this class action against Meta Platforms, Inc., Meta Platforms Technologies, LLC (collectively with Meta Platforms, Inc. "Meta"), Samasource Impact Sourcing, Inc. d/b/a Sama, and Luxottica of America, Inc., (collectively, the "Defendants"), individually and on behalf of the Classes (defined below).[1]

## I.    INTRODUCTION

1.    Plaintiffs bring this action, seeking damages, injunctive, and equitable relief arising from Defendants' negligent manufacturing and design of the Meta AI Glasses and sweeping undisclosed surveillance of private recordings made by Meta AI Glasses.

2.    Meta AI Glasses are an increasingly popular wearable tech that allow consumers to perform a variety of functions using Meta's AI platform, including reading text, generating translations, sending messages, answering calls, obtaining turn-by-turn directions, receiving reminders, recording dictation, joining immersive video calls, obtaining information about objects they see, and capturing hands-free photographs and videos. Millions of pairs of Meta AI Glasses have been purchased and are used throughout the United States.

3.    Meta AI Glasses are manufactured and designed to look nearly identical to popular Ray-Ban and Oakley non-smart glasses and do not conspicuously display when they are recording. As a result, often users and others in users' vicinity, including individuals in users' households, do not realize Meta AI Glasses are recording them.

4.    Indeed, Defendants market the glasses to users as being "[b]uilt for your privacy and others' too" and assure users that they have "control over what content [he or she] choose[s] to share with others."[2]

5.    However, whenever a person wearing Meta AI Glasses engages with Meta's AI platform—the backbone of the glasses' utility—the glasses create a recording of what the wearer sees

---

[1] The allegations herein are based on personal knowledge as to Plaintiffs' own conduct, and are made on information and belief as to all other matters, based on an investigation by counsel, which included a review of documents created and distributed by Defendants and other publicly available commentary, analysis, and information. Upon information and belief, Plaintiffs submit that discovery will further support the allegations in this Class Action Complaint ("Complaint").

[2] *AI Glasses Privacy*, Meta, https://www.meta.com/ai-glasses/privacy, last visited Mar. 19, 2026.

and/or hears. These recordings are often made without the knowledge of bystanders who may be recorded, as well as without the knowledge of the Meta AI Glasses user themselves.

6.     What's more, these recordings are not simply stored locally. Instead, they are transmitted to Meta's cloud servers where they are processed to train Meta's AI platform. And, as was recently exposed by investigative journalism, the processing is not just automated—recordings from the Meta AI Glasses are reviewed by third party subcontractor human reviewers employed by Sama and located in Nairobi, Kenya. These reviewers are subcontractors employed to manually view and label photographic and video footage captured by the Meta AI Glasses to train Meta's AI models.

7.     Unbeknownst to users who reasonably rely on Defendants' assurances that their information is private and that the user is in control of what others may see, these overseas reviewers can essentially see through the eyes of Meta AI Glasses wearers, including into incredibly private spaces including users' homes, capturing and showing third parties everything from confidential conversations to other highly sensitive content, including nudity and financial information. Indeed, these third-party reviewers have disclosed that they view "deeply private" content, including videos of users and members of their households changing clothes, using the bathroom, engaging in sexual activity, handling financial information, and conducting other private activities inside their homes.[3]

8.     Defendants' negligent manufacturing and design and secret interception, reading, storing, accessing, and/or viewing of private communications from the Meta AI Glasses used by Plaintiffs and similarly situated Class members, including without adequate disclosure and consent, constitutes a serious invasion of Plaintiffs' and Class members' privacy. Accordingly, Plaintiffs, individually and on behalf of the Classes (defined below), bring this class action to remedy the significant privacy harms caused by (1) Meta and Sama's (i) interception, recording, and/or accessing of Plaintiffs' and members of the Class's communications; (ii) the transmission of those recordings to unauthorized third parties, and (iii) the use of those recordings to train Meta's AI platform and (2) Luxottica's negligent manufacturing and design of the Meta AI Glasses which permits the Glasses to make recordings without the user's or those in the user's vicinity's knowledge and assert claims

---

[3] Naipanoi Lepapa, et al., *She Came Out of the Bathroom Naked, Employee Says*, Svenska Dagbladet (Feb. 27, 2026), https://www.svd.se/a/K8nrV4/metas-ai-smart-glasses-and-data-privacy-concerns-workers-say-we-see-everything.

against Defendants for violations the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2510, *et seq.*; the California Invasion of Privacy Act ("CIPA"), Cal. Pen. Code §§ 630, *et seq.*; the California Comprehensive Computer Data Access and Fraud Act ("CDAFA"), Cal. Penal Code § 502; the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701, *et seq.*; the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; intrusion upon seclusion; invasion of privacy; negligence; and unjust enrichment.

## II.     JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are more than 100 Members of the Classes, Plaintiffs are citizens of different states than one or more Defendants, and greater than two-thirds of the Class reside in states other than the state in which any Defendant is a citizen.

10.     This Court also has jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiffs bring a claim for violations of 18 U.S.C. §§ 2510, *et seq.*, and 18 U.S.C. §§ 2701, *et seq.* This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

11.     This Court has personal jurisdiction over each of the Defendants. Defendants purposefully directed their business activity toward this District and maintained substantial contacts in this District and throughout the United States. Defendants' conduct has had the intended effect of causing injury to individuals residing in or doing business throughout the United States, including in this District. Additionally, at all relevant times, Defendants Meta, MPT, and Sama were headquartered in this District.

12.     Venue is appropriate within this District under 28 U.S.C. § 1391. At all relevant times, Defendants transacted business within this District and/or had agents in and/or that can be found in this District and the conduct described herein giving rise to Plaintiffs' and the Class's claims arose and emanated from within this District.

13.     No other forum would be more convenient for the parties and witnesses to litigate this case.

## III.   DIVISIONAL ASSIGNMENT

14.     This civil action arises in San Mateo County, California. Accordingly, assignment to the San Francisco Division is proper pursuant to Civil L.R.3-2(c) and Civil L.R.3-2(d).

## IV.   PARTIES

### A.   Plaintiffs

15.     Plaintiff Andrew Kang is a citizen of California and resides in Carson, CA. Plaintiff Kang received the Meta AI Glasses as a gift in or about June 2025. Since June 2025, Plaintiff Kang has regularly used his Meta AI Glasses, including to use the AI at Meta function. Plaintiff Kang has regularly used the Meta AI glasses in his private residence where his wife and children also reside.

16.     Plaintiff Kang was not informed and did not consent to the Meta AI Glasses making unauthorized recordings of his communications.

17.     Plaintiff Kang was not informed and did not consent to the routing of video and audio recordings from his Meta AI Glasses to third party human reviewers.

18.     Plaintiff Betty Chen is a citizen of California and resides in Carson, CA. Plaintiff Chen purchased the Meta AI Glasses in or about May of 2025 as a gift for Plaintiff Kang. Plaintiff Chen resides in a household with Plaintiff Kang, who has used Meta AI Glasses regularly since June of 2025, including using the AI at Meta function. Plaintiff Chen has regularly been present in the residence she shares with Plaintiff Kang when he uses the Meta AI glasses therein.

19.     Plaintiff Chen was not informed and did not consent to the Meta AI Glasses making unauthorized recordings of her communications.

20.     Plaintiff Chen was not informed and did not consent to the routing of video and audio recordings from the Meta AI Glasses to third party human reviewers.

21.     Plaintiff Chen would not have purchased, or would have paid substantially less for the Meta AI Glasses, if she had known that private recordings would be shared by Defendants with third parties.

**B.     Defendants**

22.     Defendant Meta Platforms, Inc. ("Meta") is a Delaware corporation, with its principal executive offices located in Menlo Park, California. Meta is a global technology company that provides social media platforms and communications services to users worldwide as well as advertising services to millions of companies. Among other products, Meta developed, manufactures (in partnership with Luxottica of America), markets, distributes, and sells Meta AI Glasses throughout the United States. Meta owns and operates the AI software, cloud infrastructure, data processing systems, and contractual relationships through which user-captured footage is transmitted from Meta AI Glasses to Meta's servers and onward to its subcontractors. Meta controls the data pipeline at every stage: from the on-device wake-word detection system, to the smartphone app that serves as the connectivity intermediary, to the cloud servers that receive and store the footage, to the annotation queues that route footage to human reviewers, to the AI models that consume the resulting labeled data. Under Meta's Terms of Service, California law applies to this dispute.

23.     Defendant Meta Platforms Technologies, LLC ("MPT")[4] is a Delaware corporation with its principal executive offices in Menlo Park, California. MPT is a division of Meta that develops hardware and software for the "Metaverse," including virtual reality, augmented reality, and smart wearables. The Meta AI Glasses are among MPT's products. Under the Supplemental Meta Platforms Technologies Terms of Service, California law applies to this dispute.

24.     Defendant Samasource Impact Sourcing, Inc. d/b/a Sama ("Sama") is a Delaware corporation with its principal executive offices in San Francisco, California. Sama operates data annotation facilities in Nairobi, Kenya, where it employs thousands of data annotators who manually review, label, and annotate video, audio, and image data for Meta and other technology clients. Among the data reviewed by Sama's human data annotators in Kenya is data transmitted by Meta AI Glasses users to AI at Meta.

25.     Defendant Luxottica of America, Inc. ("Luxottica") is an Ohio corporation with its principal executive offices in Mason, Ohio. Luxottica of America, Inc., in partnership with Meta,

---

[4] As noted above, Defendant MPT is referred to as "Meta" along with Defendant Meta Platforms, Inc. throughout this Complaint.

designs, manufactures, advertises, markets, and sells Meta AI Glasses throughout the United States. The conduct described herein was authorized, ratified, and/or approved by Luxottica and its agents, and the advertisements for and promotion of Meta AI Glasses were disseminated throughout California and the nation by Luxottica and its agents to deceive and mislead consumers into purchasing the Meta AI Glasses.

## V. FACTUAL ALLEGATIONS

### A. Meta AI Glasses

26. In 2021, Defendant Meta partnered with eyewear maker EssilorLuxottica to launch Meta AI Glasses. Several versions of Meta AI Glasses are currently available: Ray-Ban Meta, Oakley Meta Vanguard, Oakley Meta HSTN, and Meta Ray-Ban Display.[5] The Meta AI Glasses are designed to look virtually identical to standard "no tech" Ray-Ban and Oakley glasses:



| Oakley Meta | Ray-Ban Meta |
|---|---|
| **HSTN** | **Wayfarer (Gen 1)** |
| 6 colors | 4 colors |
| From $399 or $33/month | From $299 or $25/month |

27. All Meta AI Glasses include a built-in camera that can record both still photographs and videos, as well as a microphone array that can capture voice and ambient audio recordings, speakers, and Bluetooth and Wi-Fi connectivity.

---

[5] *AI glasses*, Meta, https://www.meta.com/ai-glasses/, last visited Mar. 19, 2026.

28. More than 7 million units of Meta AI Glasses were sold globally in 2025.[6] With demand surging, Meta has discussed plans to increase annual production capacity to more than 20 million units.[7]

29. Users are able to interface with AI at Meta while using Meta AI Glasses using a built-in, AI assistant "that listens and responds in the moment."[8] AI at Meta is the umbrella term Meta uses for its AI products, including the chatbot that is integrated into Facebook, Instagram, and WhatsApp, as well as Vibes, Meta's video creation tool.[9]

30. Meta uses data obtained when wearers use Meta AI Glasses to train and improve its AI models.[10] Meta in turn uses those AI models to, *inter alia*, provide ad targeting to advertisers.

31. The consumer data collected by the Meta AI Glasses is extremely valuable to Meta. New data input is central to AI production, but as AI labs exhaust publicly available data, proprietary sources of new data can cost hundreds of millions of dollars. But instead, Meta can farm personal data from unknowing consumers who have already purchased the Meta AI Glasses—thus making consumers into commodities without consumers' knowledge or consent.

32. AI technology is an increasingly important piece of Meta's business model. Indeed, "Meta raised its 2025 capital expenditure outlook to $64 billion to $72 billion to support its AI buildout and 'expected cost of infrastructure hardware.'"[11]

---

[6] Samantha Subin, *Ray-Ban maker EssilorLuxottica says it more than tripled Meta AI glasses sales in 2025*, CNBC (Feb. 11, 2026), https://www.cnbc.com/2026/02/11/ray-ban-maker-essilorluxottica-triples-sales-of-meta-ai-glasses.html.
[7] Daniele Lepido and Antonio Vanuzzo, *Meta Seeks to Double Ray-Ban Glasses Output After Surge in Demand*, Bloomberg (Jan. 13, 2026), https://www.bloomberg.com/news/articles/2026-01-13/meta-said-to-discuss-doubling-ray-ban-glasses-output-after-surge-in-demand/.
[8] Meta, *Everyday uses for AI glasses: Work, travel and productivity*, https://www.meta.com/ai-glasses/everyday-use-cases/, last visited Mar. 19, 2026.
[9] Bruce Gil, *Meta's New Privacy Policy Opens Up AI Chats for Targeted Ads*, Gizmodo (Jan. 2, 2026), https://gizmodo.com/metas-new-privacy-policy-opens-up-ai-chats-for-targeted-ads-2000704852.
[10] Amanda Silberling, *If you own Ray-Ban Meta glasses, you should double-check your privacy settings*, TechCrunch (Apr. 30, 2025), https://techcrunch.com/2025/04/30/if-you-own-ray-ban-meta-glasses-you-should-double-check-your-privacy-settings/.
[11] Larry Dignan, *Meta ups its 2025 spending on AI, data centers*, Constellation Research (Apr. 30, 2025) https://www.constellationr.com/insights/news/meta-ups-its-2025-spending-ai-data-centers.

---

33.    In particular, Meta offers Advantage+, a suite of advertising products that use Meta's AI platform to optimize ad campaigns to deliver "smarter, faster, and more relevant ads."[12]

**B.    Meta AI Glasses Intercept, Transmit, Record, and Divulge Highly Sensitive Communications Without Wearers' or Bystanders' Knowledge or Consent**

34.    Among other uses, wearers can use Meta AI Glasses to read text, generate translations, send messages, answer calls, obtain turn-by-turn directions, receive reminders, record dictation, summarize text, join immersive video calls, obtain information about objects they see, and capture hands-free photographs and videos.[13]

35.    When a user uses a "wake word" ("Hey Meta"), manually initiates a recording by pressing a button, captures an image, or invokes the AI assistant, the Meta AI Glasses record and transmit what the wearer sees and/or hears in the form of audio, photograph, or video data via Bluetooth or Wi-Fi to the user's paired smartphone running the Meta AI app. The smartphone then transmits the data to Meta's cloud servers, from which the recording is analyzed and stored and used to train Meta's AI models.

36.    This transmission occurs in real time and from the wearer's location, whether it be a public space or an intimate, private location.

37.    The "Hey Meta" wake-word detection system is imprecise, and Meta's policies acknowledge that accidental activations occur. Consequently, the Meta AI Glasses may begin recording at any time in response to ambient speech—capturing content the user never intended to record and never knew was being transmitted to Meta's servers.

38.    As of April 29, 2025, Meta AI with camera use is enabled automatically, unless the wake word "Hey Meta" is disabled manually.[14] This means users who leave the default voice activation on have their visual captures (photos and videos) routinely analyzed by Meta AI. Also as

---

[12] *About Meta Advantage+*, Meta, https://www.facebook.com/business/help/733979527611858, last visited Mar. 19, 2026.
[13] *Id.*
[14] Aamir Khollam, *Ray-Ban Meta glasses quietly become AI data collectors in latest update*, Interesting Engineering (Apr. 30, 2025), https://interestingengineering.com/culture/ray-ban-meta-glasses-new-privacy-update.

of April 29, 2025, Meta has removed the option for wearers to opt out of the storage of voice recordings.[15]

39.    Voice recordings and transcripts are stored by default and may be retained for up to one year. The only mechanism now available to users who wish to avoid retention is to manually delete each individual recording from the app—a per recording burden that no reasonable consumer would undertake for every AI interaction. While unintended activations ("false wakes") are supposed to be deleted within 90 days, that still means that Meta retains recordings of conversations the user never intended to initiate for a substantial period of time.

40.    Because the Meta AI Glasses are so similar in appearance to standard, non-AI enabled glasses, bystanders in the vicinity of a person wearing the Meta AI Glasses often do not realize that the glasses are smart glasses with recording functions.[16]

41.    In March of 2026, three United States Senators wrote Mark Zuckerberg to express concern over the obvious threat Meta AI Glasses pose to the privacy of wearers and bystanders alike.[17]

### C.    Overseas Third-Party Human Data Annotators Review Highly Sensitive Communications Captured by Meta AI Glasses

42.    On February 27, 2026, Swedish newspapers *Svenska Dagbladet* and *Göteborgs-Posten* published a joint investigation (the "SVD Report"), that revealed that the Meta AI Glasses collect data that is reviewed by human reviewers located in Nairobi, Kenya and employed by Sama.[18]

43.    Specifically, Meta contracts with Sama for data annotation services. Sama deploys humans to review footage captured by the Meta AI Glasses, identifying, describing, and labeling objects that appear in video recordings generated from user's Meta AI Glasses in order to train Meta's AI platform to recognize and interpret the world.

---

[15] *Id.*

[16] *See* Richard Bayley, Group post concerning awareness of Meta AI Glasses Use, Facebook (Sep. 11, 2025), https://www.facebook.com/groups/395416269682034/posts/800982429125414/.

[17] *Letter from Sens. Ron Wyden, Edward Markey, and Jeffrey Merkley, to Mark Zuckerberg* (Mar. 17, 2026), https://www.markey.senate.gov/imo/media/doc/letter_to_meta_on_frt_in_smart_glasses1.pdf.

[18] Naipanoi Lepapa, *She Came Out of the Bathroom Naked, Employee Says*, Svenska Dagbladet (Feb. 27, 2026), https://www.svd.se/a/K8nrV4/metas-ai-smart-glasses-and-data-privacy-concerns-workers-say-we-see-everything.

44.    The SVD Report revealed that this human review of Meta AI Glasses recordings was often highly invasive. Sama's reviewers had described viewing "deeply private video clips, which appear to come straight out of Western homes, from people who use the [Meta AI Glasses] in their everyday lives," including material showing bathroom visits, sexual activity, and nudity.[19]

45.    For example, as one reviewer described: "Someone may have been walking around with the glasses, or happened to be wearing them, and then the person's partner was in the bathroom, or they had just come out naked."[20]

46.    As another reviewer expressed: "We see everything—from living rooms to naked bodies. Meta has that type of content in its databases. People can record themselves in the wrong way and not even know what they are recording. They are real people like you and me."[21]

47.    Moreover, while former Meta employees have represented that human faces are automatically blurred before recordings are reviewed for data annotation, Sama's reviewers explained that these obscuring efforts do not always work as intended, and faces are sometimes visible.[22]

48.    The reviewers further described instances where they could view sensitive financial information, including people's bank cards.

49.    Beyond visual content, Sama's reviewers in Kenya also review transcriptions to verify that Meta's AI assistant has answered users' questions correctly. Reviewers report reading transcripts about sensitive topics like protests and explicit content.[23]

50.    On top of being reviewed by Sama's human data annotators, the recordings generated by Meta AI Glasses are stored so that they may be used by Meta's AI platform.

51.    Aware of the invasive nature of their work, Defendant Sama takes pains to conceal their work, binding employees to "extensive confidentiality agreements."[24]

---

[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *Id.*

**D.    Defendants Tout Meta AI Glasses' Purported Privacy Features While Concealing Their Unconsented to Intrusive Recording, Human Review, and Use for AI Training**

52.    Defendants regularly hold the Meta AI Glasses out as providing wearers with privacy and affording wearers control over the recordings the glasses capture.

53.    For example, Meta's website proclaims that Meta AI Glasses are "Designed for privacy, controlled by you":[25]



54.    On the same webpage, Meta asserts that "[y]ou're in control of your data and content" and that the glasses' device and app settings "giv[e] you control over what content you choose to share with others, and when."[26] Meta touts "[c]lear, easy device and app settings" to "help you manage your information, giving you control over what content you choose to share with others, and when."[27]

55.    Meta further claims that the glasses are "[b]uilt for your privacy and others' too."[28]

56.    Furthermore, Meta promises that "When you use your glasses camera for AI features, we take steps to protect people's privacy, like removing key identifiable information."[29]

57.    By affirmatively claiming that the Meta AI Glasses were designed to protect privacy and give user's control over the data and content obtained by the Glasses, Meta assumed a duty to disclose material facts regarding the Meta AI Glasses. Meta failed to abide by this duty and instead

---

[25] *AI Glasses Privacy*, Meta, https://www.meta.com/ai-glasses/privacy/?srsltid=AfmBOoocc 16avtcW9KrBelrL42Q0C4IAGPlPSktfWgK6RaML5zXpF4dx, last visited Mar. 19, 2026.
[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] *Id.*

concealed and otherwise failed to disclose material facts about the Meta AI Glasses including that the Meta AI Glasses would intercept the communications of both users and non-users, even in circumstances where the user had not knowingly activated the Glasses' AI capabilities, and share these communications with Sama and its employees.

58.     Meta's marketing and privacy disclosures fail to disclose that Meta AI Glasses routinely record and intercept highly sensitive videos, images, and audio, that Meta transmits those recordings to Meta's servers, and that those recordings are reviewed by Defendant Sama's overseas human reviewers and used to train Meta's AI platform.

59.     While Meta does provide certain privacy disclosures, at no point does Meta disclose (i) that private communications and recordings of highly sensitive content—including, *inter alia*, nudity, sexual activity, bathroom visits, and bank cards—is reviewed by human reviewers; (ii) that these human reviewers are employed by third party, Sama, and are located overseas in Nairobi, Kenya; (iii) that efforts to anonymize faces and blur financial information frequently fail, leaving faces, bodies, and financial information visible to human reviewers; or (iv) that these private communications and recordings of highly sensitive content are used to train Meta's AI platform.

60.     By touting the Meta AI Glasses' purported privacy features while simultaneously concealing that private and highly sensitive content is recorded by the Meta AI Glasses, shared with third party human reviewers, and used to train AI at Meta, Defendants created a false impression that the Meta AI Glasses provided comprehensive protection of user privacy.

61.     Moreover, Defendants do not ask Plaintiff and similarly situated Class members whether they consent to having the contents of communications recorded and intercepted by Meta disclosed to third party reviewers.

62.     Despite the recent public reporting on significant privacy concerns raised by the Meta AI Glasses, Defendants continue to misrepresent the scope of the Meta AI Glasses' recordings, the review of those recordings by overseas third-party reviewers, and the use of those recordings to train Meta's AI platform. As a result, consumers continue to purchase and use Meta AI Glasses under the false impression that their privacy is being protected.

**E.      The Meta AI Glasses' Recording, Interception, Third Party Communication Sharing, and AI Training Practices are Egregious Breaches of Social Norms and of Plaintiffs' and Class Members' Privacy Rights**

63.      The extent of Meta AI Glasses' recordings, as well as the transmission of those recordings to overseas human reviewers and their use to train Meta's AI models defy social norms and invade reasonable privacy expectations.

64.      A single activation of AI at Meta while using the Meta AI Glasses—even an inadvertent "false wake"—leads to audiovisual recording of the environment surrounding the glasses that is stored to Meta's cloud servers and used for training Meta's AI platform. This training includes potential review by overseas third-party human reviewers, all unbeknownst to the wearer and anyone else who happens to be recorded. This is particularly concerning given that these Meta AI Glasses accompany users throughout their daily routines—in their homes, bathrooms, bedrooms, and other private spaces, capturing deeply private moments: changing clothes, using the toilet, engaging in sexual activity, caring for children, and more.

65.      Additionally, the collection and use of recordings from the Meta AI Glasses puts users and those recorded by the glasses at increased risk for further privacy violations, as data breaches and other security vulnerabilities are increasingly common. Because Meta possesses these valuable private recordings, it is a target for hackers.

66.      Moreover, storing and transmitting recordings from the Meta AI Glasses leave users susceptible to exploitation by the third-party reviewers hired to annotate the recordings. These reviewers may copy, retain, distribute, and exploit the recordings for harassment, extortion, blackmail, public dissemination, or other reasons.

67.      A reasonable consumer would not expect that the Meta AI Glasses would record and intercept private communications, including videos and audio recordings captured in private spaces, and revealing highly sensitive content, including, *inter alia*, nudity, sexual activity, bathroom visits, and bank cards, through the Meta AI Glasses, allow overseas human reviewers to review such recordings, or utilize such recordings to train Meta's AI platform. This is particularly true in light of

Meta's representations that the Meta AI Glasses offer privacy and afford users "control of [their] data and content."[30]

## VI.    TOLLING OF THE STATUTE OF LIMITATIONS

### A.    Discovery Rule Tolling

68.    As a result of the acts and omissions of Defendants, Plaintiffs could not have discovered, through the exercise of reasonable due diligence, the conduct at issue in this Complaint until at least February 27, 2026, when *Svenska Dagbladet* and *Göteborgs-Posten* published a report revealing that Meta AI Glasses were recording unintended content and transmitting recordings to third party human reviewers employed by Defendant Sama. Thus, the applicable limitation periods did not begin to accrue until Plaintiffs discovered, or through the exercise of reasonable diligence should have discovered, Defendants' wrongful acts and omissions.

### B.    Fraudulent Concealment Tolling

69.    All applicable statutes of limitation have also been tolled by Defendants' knowing and active fraudulent concealment and denial of the facts alleged herein throughout the period relevant to this action. Specifically, Defendants concealed that Meta AI Glasses were intercepting and recording certain communications and transmitting such recordings to third party human reviewers employed by Defendant Sama. At all times, Defendants were under a continuous duty to disclose that Meta AI Glasses were recording content and transmitting recordings to third party human reviewers employed by Defendant Sama.

### C.    Estoppel

70.    Defendants were under a continuous duty to disclose to Plaintiffs and members of the Classes that Meta AI Glasses were recording unintended content and transmitting recordings to third party human reviewers employed by Defendant Sama.

71.    Based on the foregoing, Defendants are estopped from relying on any statutes of limitations in defense of this action.

---

[30] *Id.*

## VII.    CLASS ACTION ALLEGATIONS

72.    Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2), and (b)(3) on behalf of the following Classes (the "Classes"):

**Wearer Class:** All wearers of Meta AI Glasses residing in the United States whose audio, video, or electronic communications were intercepted, recorded, transmitted, stored, or disclosed by Defendants.

**Household Member Class:** All household members of Meta AI Glasses wearers residing the United States who had recordings of them made by or through Meta AI Glasses and had those recordings shared intercepted, recorded, transmitted, stored, or disclosed by Defendants.

**Purchaser Class:** All individuals residing in the United States who have purchased Meta AI Glasses.

73.    Excluded from the Classes are Defendants and their parents, subsidiaries, and corporate affiliates; governmental entities. Plaintiffs reserve the right to revise the definition of the Classes based upon subsequently discovered information and reserve the right to establish Sub-Classes where appropriate.

74.    Members of the Classes are so numerous that joinder of all members is impracticable. The precise number of members of the Classes and their identities are unknown to Plaintiffs at this time. Plaintiffs believe that there are at least millions of members of the Classes throughout the United States. In the year 2025 alone, more than 7 million units of Meta AI Glasses were sold globally.

75.    Common questions of law and fact exist as to all members of the Classes and predominate over any issues solely affecting individual members of the Classes. The common and predominating questions of law and fact, each of which may also be certified under Rule 23(c)(4), include, but are not limited to:

a.    Whether Defendants Meta and Sama contemporaneously and intentionally intercepted and/or disclosed Plaintiffs' and members of the Classes' communications;

b. Whether Defendants Meta and Sama's conduct as described herein was knowing, willful, and intentional;

c. Whether Defendant Meta and Sama's acts and practices violated the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510, et seq.;

d. Whether Defendants Meta and Sama's acts and practices violated the California Invasion of Privacy Act, Cal. Penal Code §§ 630, et seq.;

e. Whether Meta AI Glasses constitute "computers" within the scope of Cal. Penal Code § 502;

f. Whether Defendants Meta and Sama knowingly accessed Plaintiffs' and class members' communications and/or data;

g. Whether Meta and Sama violated the Stored Communications Act, 18 U.S.C. §§ 2701, et seq.;

h. Whether Meta's acts and practices as described herein constituted a violation of California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq.;

i. Whether Meta's acts and practices as described herein constituted a violation of California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, et seq.

j. Whether Meta's conduct as described herein constitutes "unfair," "unlawful," and/or "fraudulent" acts or practices under Cal. Bus. & Prof. Code §§ 17200, et seq.;

k. Whether Defendants Meta and Sama intruded and/or aided, agreed with, employed, and/or conspired to intrude into private places, conversations, and/or matters;

l. Whether Defendants Meta and Sama's conduct as described herein was highly offensive to a reasonable person;

m. Whether Defendants Meta and Sama violated legally protected privacy interests;

n. Whether Defendants Meta and Sama's conduct as described herein is an egregious breach of social norms;

o.  Whether Defendant Luxottica negligently manufactured, designed and/or marketed the Meta AI Glasses.

p.  Whether Defendants were unjustly enriched by the conduct alleged herein;

q.  Whether this case may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure;

r.  Whether damages, restitution, equitable, injunctive, declaratory, or other relief is warranted;

s.  Whether and to what extent Plaintiffs and the Class are entitled to recover attorneys' fees and costs.

76.  Plaintiffs' claims are typical of the claims of the Classes that Plaintiffs seek to represent. As alleged herein, Plaintiffs and members of the Classes sustained damages arising out of the same unlawful actions and conduct by Defendants.

77.  Plaintiffs are willing and prepared to serve the Classes in a representative capacity with all of the obligations and duties material thereto. Plaintiffs will fairly and adequately protect the interests of the Classes and have no interests adverse to or in conflict with the interests of the other the Classes.

78.  Plaintiffs' interests are co-extensive with and are not antagonistic to those of absent members within the Classes. Plaintiffs will undertake to represent and protect the interests of absent members of the Classes and will vigorously prosecute this action.

79.  Plaintiffs have engaged the services of the undersigned counsel. Counsel is experienced in complex class action litigation, will adequately prosecute this action, and will assert and protect the rights of, and otherwise represent, Plaintiffs and the absent members of the Classes.

80.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiffs know of no difficulty to be encountered in the management of this litigation that would preclude its maintenance as a class action.

81.  The damages or other financial detriment suffered by individual members of the Classes are small compared with the burden and expense that would be entailed by individual litigation of their claims against Defendants. It would thus be virtually impossible for the members

of the Classes, on an individual basis, to obtain effective redress for the wrongs done to them. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

82. Superiority is particularly satisfied here, where the law of a single state will apply to all state law claims. Under the uniform contract terms with Meta, the law of California will apply to each Class member's claims, allowing the Court to adjudicate the claims of all members of the Classes under a single state analysis.

83. Class action status is warranted under Rule 23(b)(3) because questions of law or fact common to the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

84. The Classes may also be certified under Rule 23(b)(2) because Defendants have acted on grounds generally applicable to the Classes, thereby making it appropriate to award final injunctive relief or corresponding declaratory relief with respect to the Classes.

85. The interest of members within the Classes individually controlling the prosecution of separate actions is theoretical and not practical. The Classes have a high degree of similarity and are cohesive, and Plaintiffs anticipate no difficulty in the management of this matter as a class action.

86. The nature of notice to the proposed Classes is contemplated to be by direct mail upon certification of the Class or, if such notice is not practicable, by the best notice practicable under the circumstance including, *inter alia*, email, publication in major newspapers, and/or on the internet.

## VIII.   CLAIMS FOR RELIEF

### COUNT I

**Violations of the Electronic Communications Privacy Act ("ECPA"),**

**18 U.S.C. §§ 2510, *et seq.***

**(On Behalf of the Wearer Class and the Household Member Class Against Defendants Meta,**

**MPT, and Sama)**

87.     Plaintiffs incorporate by reference and re-allege the allegations contained in the preceding paragraphs of this Complaint.

88.     Plaintiffs bring this cause of action individually and on behalf of all members of the Wearer and Household Member Classes against Defendants Meta, MPT, and Sama.

89.     The Electronic Communications Privacy Act, 18 U.S.C. §§ 2510, *et seq*., prohibits the interception of any wire, oral, or electronic communications without the consent of at least one authorized party to the communication.

90.     The ECPA confers a civil cause of action on "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter." 18 U.S.C. § 2520(a).

91.     The ECPA protects both the sending and receipt of communications.

92.     A violation of the ECPA occurs where any person "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any . . . electronic communication" or "intentionally discloses, or endeavors to disclose, to any other person the contents of any . . . electronic communication, knowing or having reason to know that the information was obtained through the [unlawful] interception of a[n] . . . electronic communication" or "intentionally uses, or endeavors to use, the contents of any . . . electronic communication, knowing or having reason to know that the information was obtained through the [unlawful] interception of a[n] . . . electronic communication." 18 U.S.C. §§ 2511(1)(a), (c)-(d).

93.     In addition, "a person or entity providing an electronic communication service to the public shall not intentionally divulge the contents of any communication . . . while in transmission

on that service to any person or entity other than an addressee or intended recipient of such communication or an agent of such addressee or intended recipient." 18 U.S.C. § 2511(3)(a).

94.    "Intercept" means "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

95.    "Electronic communication" means "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce." 18 U.S.C. § 2510(12).

96.    "Contents" includes "any information concerning the substance, purport, or meaning" of the communication at issue. 18 U.S.C. § 2510(8).

97.    An "electronic communication service" means "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15).

98.    Plaintiff Kang and members of the Wearer Class's communications with AI at Meta through the Meta AI Glasses are electronic communications under the ECPA.

99.    Plaintiff Chen and members of the Household Member Class's communications which were recorded by Meta AI Glasses are electronic communications under the ECPA.

100.    When Plaintiffs and members of the Wearer and Household Member Classes communicated with AI at Meta through the Meta AI Glasses, Meta contemporaneously and intentionally intercepted, and endeavored to intercept Plaintiffs' and members of the Wearer and Household Member Class's electronic communications without authorization or consent.

101.    When Plaintiff Kang and members of the Wearer Class communicated with AI at Meta through the Meta AI Glasses, Defendants Meta and MPT contemporaneously and intentionally disclosed, and endeavored to disclose the contents of Plaintiff Kang's and members of the Wearer Class's electronic communications to Defendant Sama and its employees, without authorization or consent, and knowing or having reason to know that the electronic communications were obtained in violation of the ECPA.

102.    When Plaintiff Kang and members of the Wearer Class communicated with AI at Meta through the Meta AI Glasses, Defendants Meta and MPT contemporaneously and intentionally redirected the contents of Plaintiff Kang's and members of the Wearer Class's electronic communications while those communications were in transmission, to persons or entities other than an addressee or intended recipient of such communication, namely Defendant Sama and its employees.

103.    When Plaintiff Kang and members of the Wearer Class communicated with AI at Meta through the Meta AI Glasses, Defendants Meta and MPT contemporaneously and intentionally divulged the contents of Plaintiff Kang's and members of the Wearer Class's electronic communications while those communications were in transmission, to persons or entities other than an addressee or intended recipient of such communication, namely Defendant Sama and its employees.

104.    While the ECPA provides that it shall not be unlawful for someone to intercept communications where they are a party, or where one-party consents, the ECPA provides that this exception does not apply in situations like this where the "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d).

105.    Defendants Meta, MPT, and Sama intercepted Plaintiff Kang's and members of the Wearer Class's communications for the purpose of committing the tort of intrusion upon seclusion, as described in Count VIII. Defendants Meta, MPT, and Sama's interception and onward transmission of intimate footage—including nudity, sexual activity, bathroom visits, and private conversations— to third party human reviewers constitutes an intentional intrusion upon the solitude and seclusion of Plaintiffs and Class members that is highly offensive to a reasonable person. Because Defendants Meta, MPT, and Sama's purpose in intercepting these communications was to commit this independent tortious act, the one-party consent exception does not shield Defendants from ECPA liability.

106.    Additionally, in some instances when Plaintiff Kang and members of the Wearer Class engaged in private communications with other persons without activating their Meta AI Glasses to

record, Meta contemporaneously and intentionally intercepted, and endeavored to intercept Plaintiffs' and members of the Wearer Class's electronic communications without authorization or consent.

107.   When Plaintiff Kang and members of the Wearer Class communicated with other persons without activating their Meta AI Glasses, Defendants Meta and MPT contemporaneously and intentionally disclosed, and endeavored to disclose the contents of Plaintiff Kang's and members of the Wearer Class's electronic communications to Defendant Sama and its employees, without authorization or consent, and knowing or having reason to know that the electronic communications were obtained in violation of the ECPA.

108.   When Plaintiff Kang and members of the Wearer Class communicated with other persons without activating their Meta AI Glasses, Defendants Meta and MPT contemporaneously and intentionally redirected the contents of Plaintiff Kang's and members of the Wearer Class's electronic communications while those communications were in transmission, to persons or entities other than an addressee or intended recipient of such communication, namely Defendant Sama and its employees.

109.   When Plaintiff Kang and members of the Wearer Class communicated with other persons without activating their Meta AI Glasses, Defendants Meta and MPT contemporaneously and intentionally divulged the contents of Plaintiff Kang's and members of the Wearer Class's electronic communications while those communications were in transmission, to persons or entities other than an addressee or intended recipient of such communication, namely Defendant Sama.

110.   Moreover, when Plaintiff Chen and members of the Household Member Class were in the vicinity of the Meta AI Glasses, Meta contemporaneously and intentionally intercepted, and endeavored to intercept Plaintiff's and members of the Household Member Class's electronic communications without authorization or consent.

111.   When Plaintiff Chen and members of the Household Member Class made communications in the vicinity of the Meta AI glasses, Defendants Meta and MPT contemporaneously and intentionally disclosed, and endeavored to disclose the contents of Plaintiff Chen's and members of the Household Member Class's electronic communications to Defendant

Sama and its employees, without authorization or consent, and knowing or having reason to know that the electronic communications were obtained in violation of the ECPA.

112. When Plaintiff Chen and members of the Household Member Class made communications in the vicinity of the Meta AI glasses, Defendants Meta and MPT contemporaneously and intentionally redirected the contents of Plaintiff Chen's and members of the Household Member Class's electronic communications while those communications were in transmission, to persons or entities other than an addressee or intended recipient of such communication, namely Defendant Sama and its employees.

113. When Plaintiff Chen and members of the Household Member Class made communications in the vicinity of the Meta AI glasses, Defendants Meta and MPT contemporaneously and intentionally divulged the contents of Plaintiff Chen's and members of the Household Member Class's electronic communications while those communications were in transmission, to persons or entities other than an addressee or intended recipient of such communication, namely Defendant Sama.

114. Defendants Meta, MPT, and Sama's actions were at all relevant times knowing, willful, and intentional.

115. Defendants Meta, MPT, and Sama's violations of the ECPA are ongoing and continuous. Each instance that Defendants intercept, disclose, and use (1) Plaintiff Kang's and members of the Wearer Class's communications and (2) Plaintiff Chen's and members of the Household Member Class's communications without lawful consent constitutes a separate violation of the ECPA.

116. Pursuant to 18 U.S.C. § 2520, Plaintiff Kang and members of the Wearer Class and Plaintiff Chen and members of the Household Member Class have been damaged by the interception, disclosure, and/or use of their communications in violation of the ECPA and are entitled to: (i) appropriate equitable or declaratory relief; (ii) damages, in an amount to be determined at trial, assessed as the greater of (a) the sum of the actual damages suffered by Plaintiffs and Members of the Classes and any profits made as a result of the violation, or (b) statutory damages of whichever is

the greater of $100 per day per violation or $10,000; and (iii) reasonable attorneys' fees and other litigation costs reasonably incurred.

## COUNT II

### Violations of the California Invasion of Privacy Act ("CIPA"),

### Cal. Pen. Code §§ 630, *et seq.*

### (On Behalf of the Wearer Class and Household Member Class Against Defendants Meta, MPT, and Sama)

117.    Plaintiffs incorporate by reference and re-allege the allegations contained in the preceding paragraphs of this Complaint.

118.    Plaintiffs brings this cause of action individually and on behalf of all members of the Wearer and Household Member Classes against Defendants Meta, MPT, and Sama.

119.    The California Legislature enacted the California Invasion of Privacy Act, Cal. Penal Code §§ 630, *et seq.*, to address "advances in science and technology [that] have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." Cal. Pen. Code § 630.

120.    Although the "declaration of policy" for CIPA provides that CIPA is intended "to protect the right of privacy of the people of this state," CIPA Section 637.2—titled "Civil action by persons injured; injunction"—provides that an action under CIPA can be brought by "*[a]ny person who has been injured by a violation of this chapter . . . against the person who committed the violation*" Cal. Penal Code § 637.2 (emphasis added). To establish liability under section 631(a), Plaintiffs need only establish that a Defendant, "by means of any machine, instrument, or contrivance, or in any other manner," did any of the following:

> [i] [I]ntentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,
>
> *Or*

[ii] [W]illfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state,

*Or*

[iii] [U]ses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,

*Or*

[iv] [A]ids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

121.    To avoid liability under § 631, a defendant must show it had the consent of all parties to a communication.

122.    Each of Defendants Meta, MPT, and Sama are a "person" for the purposes of CIPA.

123.    Defendants Meta, MPT, and Sama's acts and practices complained of herein violated and continue to violate Cal. Pen. Code § 631(a).

124.    Defendants Meta and MPT maintain their headquarters in California, where they conspired with Sama to unlawfully permit or caused, without the consent of all parties to the communication, or in any unauthorized manner, read, or attempt to read, or learn the contents or meaning of Plaintiffs' and the members of the Wearer Class's and Household Member Class's communications while the same were in transit or passing over any wire, line, or cable or as being sent from or received at any place within the State of California.

125.    The Meta AI Glasses, the Meta AI app operating on Plaintiff Kang's and members of the Wearer Class's smartphones, and Meta's servers are each a "machine, instrument, or contrivance, or . . . other manner" used to engage in the prohibited conduct at issue here. Cal. Penal Code § 631.

126.    Defendants Meta and MPT aided, agreed with, employed, and conspired with Defendant Sama to unlawfully, permit, or cause Sama and its employees to willfully and without the consent of all parties to the communication, or in any unauthorized manner, read, or attempt to read, or learn the contents or meaning of Plaintiffs' and members of the Wearer and Household Member

Class's communications while the same were in transit or passing over any wire, line, or cable or as being sent from or received at any place within the State of California.

127. Defendants Meta and MPT also aided, agreed with, employed, and conspired with Defendant Sama in the State of California to use, or attempt to use, or communicate information so obtained.

128. Defendant Sama and its employees willfully, without the consent of all parties to the communication, and in an unauthorized manner, read, or attempted to read, or learned the contents or meaning of Plaintiffs' and members of the Wearer Class's and Household Member Class's communications while such communications were in transit or passing over any wire, line, or cable, or as being sent from or received at any place within the State of California.

129. At all relevant times, Defendants Meta and MPT's disclosure of Plaintiffs' and members of the Wearer and Household Members Class's communications via the Meta AI Glasses to Defendant Sama was in real time without Plaintiffs' and members of the Wearer Class's and Household Member Class's authorization or consent.

130. At all relevant times, Defendants Meta and MPT intentionally caused Plaintiffs and members of the Wearer and Household Members Class's communications to be intercepted, recorded, stored, and transmitted to Sama and its employees.

131. At all relevant times, Defendant Sama intentionally made unauthorized connections with the lines of internet communication between Plaintiffs and members of the Wearer Class and Household Member Class and Meta's servers without the consent of all parties to the communication.

132. At all relevant times, Defendant Sama and its employees willfully read or attempted to read or learn the contents or meaning of Plaintiffs' and members of the Wearer Class's and Household Member Class's communications while the communications were in transit or passing over any wire, line, or cable, or were being received at any place within California when it intercepted Plaintiffs' and members of the Wearer Class's and Household Members Class's communications with AI at Meta in real time.

133.    By allowing Defendant Sama and its employees to access such communications, Defendants Meta and MPT aided, agreed with, employed, and conspired with Defendant Sama to carry out the wrongful conduct alleged herein in violation of Cal. Penal Code § 631(a)[iv].

134.    Additionally, at all relevant times, Meta's and MPT's disclosure of Plaintiff Chen and members of the Household Member Class's communications to Meta and MPT was without the authorization and consent of Plaintiff Chen and members of the Household Members Class.

135.    Defendants Meta and MPT willfully and without the consent of all parties to the communication, or in any unauthorized manner, read, or attempt to read, or learn the contents or meaning of Plaintiffs Chen's and members of the Household Member Class's communications while the same were in transit or passing over any wire, line, or cable or as being sent from or received at any place within the State of California.

136.    Defendants Meta and MPT willfully, without the consent of all parties to the communication, and in an unauthorized manner, read, or attempted to read, or learned the contents or meaning of Plaintiff Kang's and members of the Wearer Class's communications with AI at Meta while such communications were in transit or passing over any wire, line, or cable, or as being sent from or received at any place within the State of California.

137.    At all relevant times, Defendants Meta and MPT's disclosure to themselves of Plaintiffs Chen's and members of the Household Members Class's communications via the Meta AI Glasses was in real time without Plaintiff Chen's and members of the Household Member Class's authorization or consent.

138.    At all relevant times, Defendants Meta and MPT intentionally caused Plaintiff Chen's and members of the Household Members Class's communications to be intercepted, recorded, stored, and transmitted to Meta and MPT.

139.    At all relevant times, Defendants Meta and MPT willfully read or attempted to read or learn the contents or meaning of Plaintiff Chen's and members of the Household Member Class's communications while the communications are in transit or passing over any wire, line, or cable, or were being received at any place within California when it intercepted Plaintiff Chen's and members of the Household Member Class's communications with AI at Meta in real time.

140.    By accessing such communications, Defendants Meta and MPT carried out the wrongful conduct alleged herein in violation of Cal. Penal Code § 631(a)[iv].

141.    Plaintiffs and members of the Wearer Class and Household Member Class seek statutory damages in accordance with § 637.2(a), which provides for the greater of: (i) $5,000 per violation; or (ii) three times the amount of damages sustained by Plaintiffs and Members of the Classes in an amount to be proven at trial, as well as injunctive or other equitable relief.

## COUNT III

**Violations of the California Comprehensive Computer Data Access and Fraud Act**

**("CDAFA"), Cal. Penal Code § 502**

**(On Behalf of the Wearer Class Against Defendants Meta, MPT, and Sama)**

142.    Plaintiff Kang incorporates by reference and re-allege the allegations contained in the preceding paragraphs of this Complaint.

143.    Plaintiff Kang brings this cause of action individually and on behalf of all members of the Wearer Class against Defendants Meta, MPT, and Sama.

144.    The California legislature enacted CDAFA with the intent of "expand[ing] the degree of protection afforded to individuals . . . from tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems." Cal. Penal Code §502(a). The enactment of CDAFA was motivated by the finding that "the proliferation of computer technology has resulted in a concomitant proliferation of . . . unauthorized access to computers, computer systems, and computer data." *Id.*

145.    Meta AI Glasses constitute "computers" within the scope of CDAFA.

146.    Defendant Meta, MPT, and Sama violated Cal. Penal Code §502(c)(1), which makes it unlawful to "knowingly access[] and without permission . . . use[] any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data."

147.    Defendants Meta, MPT, and Sama also violated Cal. Penal Code §502(c)(2), which makes it unlawful to "knowingly access[] and without permission take[], cop[y], or make[] use of any data from a computer, computer system, or computer network, or take[] or cop[y] any supporting

documentation, whether existing or residing internal or external to a computer, computer system, or computer network."

148. Defendants Meta, MPT, and Sama also violated Cal. Penal Code §502(c)(7), which makes it unlawful to "knowingly and without permission access[] or caus[e] to be accessed any computer, computer system, or computer network."

149. Defendants Meta, MPT, and Sama knowingly accessed recordings generated using Plaintiff's and members of the Wearer Class's Meta AI Glasses and/or recordings featuring audio and/or video of Plaintiff and the Wearer Class without their permission by surreptitiously tracking, viewing, and cataloguing data, communications, and personal information concerning Plaintiff and Members of the Wearer Class.

150. Defendants Meta, MPT, and Sama used data, communications, and personal information that it intercepted and took from Plaintiff's and Members of the Wearer Class's Meta AI Glasses to wrongfully and unjustly enrich themselves at the expense of Plaintiff and members of the Wearer Class.

151. Defendants Meta, MPT, and Sama took, copied, intercepted, and made use of data, communications, and personal information from Plaintiff's and members of the Wearer Class's Meta AI Glasses.

152. Defendants Meta, MPT, and Sama knowingly and without Plaintiff's and members of the Wearer Class's permission accessed or caused to be accessed their video footage captured by Meta AI Glasses by surreptitiously intercepting and/or taking data, communications, and personal information concerning Plaintiff and members of the Wearer Class.

153. Defendants Meta, MPT, and Sama accessed, or caused to be accessed, Plaintiff's and members of the Wearer Class's data, communications, and personal information from California. On information and belief, Meta uses servers located in California that allow Defendants to access and process the data, communications, and personal information concerning Plaintiff and members of the Wearer Class.

154. As a direct and proximate result of Defendants Meta, MPT, and Sama's violations of CDAFA, Plaintiff and members of the Wearer Class suffered damages.

155. Pursuant to CDAFA Section 502(e)(1), Plaintiff and members of the Wearer Class seek compensatory, injunctive, and equitable relief in an amount to be determined at trial. Pursuant to CDAFA Section 502(e)(2), Plaintiff and members of the Wearer Class seek an award of reasonable attorneys' fees and costs. Pursuant to CDAFA Section 502(e)(4), Plaintiff and members of the Wearer Class also seek punitive or exemplary damages for Defendants Meta, MPT, and Sama's willful violations of CDAFA.

## COUNT IV

### Violations of the Stored Communications Act ("SCA"),

### 18 U.S.C. §§ 2701, *et seq.*

### (On Behalf of the Wearer Class Against Defendants Meta, MPT, and Sama)

156. Plaintiff Kang incorporates by reference and re-allege the allegations contained in the preceding paragraphs of this Complaint.

157. Plaintiff Kang brings this cause of action individually and on behalf of all members of the Wearer Class against Defendants Meta, MPT, and Sama.

158. The SCA provides that a person "providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service[.]" 18 U.S.C. §2702(a)(1).

159. "Electronic communication" is broadly defined as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce[.]" 18 U.S.C. §2510(12).

160. "Electronic storage" is defined as "any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and . . . any storage of such communication by an electronic communication service for purposes of backup protection of such communication[.]" 18 U.S.C. §2510(17)(A)-(B).

161. "Electronic communication service" is defined as "any service which provides to users thereof the ability to send or receive wire or electronic communications[.]" 18 U.S.C. §2510(15).

162. "Person" is defined as "any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation." 18 U.S.C. §2510(6).

163. Each of Defendants Meta, MPT, and Sama are a corporation and a person as defined under 18 U.S.C. §2510(6).

164. Defendant Sama's human reviewers are persons as defined under 18 U.S.C. §2510(6).

165. Plaintiff and members of the Wearer Class, as individuals, are persons as defined under 18 U.S.C. §2510(6).

166. Plaintiff and members of the Wearer Class reasonably expected that using Meta AI Glasses would not involve disclosing their "electronic communications," i.e., recordings made in connection with AI at Meta while using the Meta AI Glasses, to overseas third-party human reviewers, including those employed by Defendant Sama. Plaintiff's and members of the Wearer Class's expectations were based, in part, on Defendants Meta, MPT, and Sama's failure to provide any disclosures or obtain consent for permission to do so. Defendant Sama and its overseas human reviewers were not intended parties or recipients of Plaintiff's and members of the Wearer Class's recorded communications. Plaintiff and members of the Wearer Class did not consent or authorize Defendants Meta, MPT, or Sama to disclose their communications to any third parties.

167. Defendant Meta stores Plaintiff's and members of the Wearer Class's electronic communications for back-up or processing purposes. During this period, Defendants Meta and MPT, without authorization, knowingly and intentionally divulged and transmitted Plaintiff's and members of the Wearer Class's recorded communications to third parties, such as Defendant Sama and its overseas human reviewers, in intentional or in reckless disregard for Plaintiff's and members of the Wearer Class's privacy rights. Defendant Meta, MPT, and Sama did so for their own benefit in order to improve Meta's AI models and to deliver targeted advertising.

168. Defendants Meta, MPT, and Sama's actions were at all relevant times knowing, willful, and intentional, given that this was Defendants' routine business practice, and Defendants purposefully failed to disclose this practice to consumers.

169.    As a result of Defendants Meta, MPT, and Sama's violations of the SCA, Plaintiff and members of the Wearer Class have suffered harm and injury, including, but not limited to, the invasion of their privacy rights.

170.    Pursuant to 18 U.S.C. §2707, Plaintiff and members of the Wearer Class are entitled to: (i) appropriate equitable or declaratory relief; (ii) damages, in an amount to be determined at trial, assessed as the sum of the actual damages suffered by Plaintiff and members of the Wearer Class and any profits made by Defendants Meta, MPT, and Sama as a result of the violation, but in no case less than the minimum statutory damages of $1,000 per person; and (iii) reasonable attorneys' fees and other litigation costs reasonably incurred.

## COUNT V

### Violation of California Consumer Legal Remedies Act

### (Cal. Civ. Code §§ 1750, *et seq*.)

### (On Behalf of the Purchaser Class Against Meta, MPT, and Luxottica)

171.    Plaintiff Chen incorporates by reference and re-alleges the allegations contained in the preceding paragraphs of this Complaint.

172.    Plaintiff Chen brings this cause of action individually and on behalf of all members of the Purchaser Class against Defendants Meta, MPT, and Luxottica.

173.    CLRA "protect[s] consumers against unfair and deceptive business practices." *See* Cal. Civ. Code § 1760.

174.    Plaintiff Chen and members of the Purchaser Class are persons within the context of the CLRA, *see* Cal. Civ. § 1761(d), who purchased Meta AI Glasses.

175.    Meta AI Glasses are goods within the meaning of Cal. Civ. Code § 1761(a).

176.    Meta, MPT, and Luxottica and violated and continues to violate the CLRA by engaging in unfair and deceptive trade practices, including, *inter alia*:(1) representing that the Meta AI Glasses have characteristics which they do not (2) representing that the Meta AI Glasses are of a particular standard when they are of another; and (3) advertising the Meta AI Glasses with the intent not to sell them as advertised.  *See* Cal. Civ. Code § 1770.

177.    Meta, MPT, and Luxottica violated the CLRA by failing to disclose that the Meta AI Glasses engage in "false wakes" which take audio and video recordings of both users and non-users in the vicinity of Meta AI Glasses without their authorization or consent.

178.    Meta, MPT, and Luxottica further violated the CLRA by failing to disclose the material fact that the Meta AI Glasses may take recordings and/or videos that are transmitted to Meta's servers and shared with Sama and its employees.

179.    The fact that the Meta AI Glasses engage in "false wakes" and take unauthorized recordings is material because Plaintiff and members of the Purchaser Class had a reasonable expectation that the Meta AI Glasses would not take unsolicited and unauthorized recordings.

180.    Additionally, the fact that Meta shares the contents of audio and video recordings with Sama and its employees is material because Plaintiff and members of the Purchaser Class had a reasonable expectation that Meta would not share audio and video recordings, including recordings taken without Plaintiff's and Purchaser Class members' knowledge, with Sama and its employees.

181.    Meta, MPT, and Luxottica have knowingly and willfully engaged in deceptive and unfair trade practices, including, but not limited to, deception, fraud, false pretense, false promises, misrepresentation and the knowing concealment, suppression and omission of material facts concerning the fact that recordings obtained from Meta AI Glasses were shared with Sama and its employees.

182.    Meta, MPT, and Luxottica fraudulently, intentionally, negligently, and/or recklessly misrepresented to Plaintiff Chen and members of the Purchaser Class that users of the Glasses could control the data and content generated by the Glasses, that users had control over what content was shared and that the Glasses had privacy features that they, in fact, do not.

183.    Upon information and belief, the decision of Meta, MPT, and Luxottica to fraudulently, intentionally, negligently, and/or recklessly misrepresent the privacy features of the Meta AI Glasses to Plaintiff Chen and members of the Purchaser Class was made in California.

184.    Information regarding the privacy features of the Meta AI Glasses is material to consumers because the fact that the Meta AI Glasses take unauthorized recordings constitutes a serious invasion of privacy.

185.    Meta, MPT, and Luxottica's unlawful acts and practices affect the public interest and trade and commerce in the State of California.

186.    As a proximate and direct result of Meta, MPT, and Luxottica's violations of the CLRA, Plaintiff Chen and members of the Purchaser Class have suffered damages and inconvenience.

187.    With this filing, and on this Count, Plaintiff Chen and members of the Purchaser Class seek an order enjoining Meta, MPT, and Luxottica's unfair and deceptive practices.

188.    Meta, MPT, and Luxottica's violations of the CLRA were willful and oppressive.

189.    Plaintiff Chen has provided Meta, MPT, and Luxottica with notice of its violations of the CLRA pursuant to Cal. Civ. Code § 1782(a) by letters dated March 23, 2026. Therefore, Plaintiff Chen and members of the Purchaser Class are entitled to seek monetary relief for Defendants' violation of the CLRA.

190.    Plaintiff Chen and members of the Purchaser Class seek actual damages, punitive damages, statutory damages, restitution, attorneys' fees, and any other relief proper under the CLRA. *See* Cal. Civ. Code § 1780.

**COUNT VI**

**Violation of California's False Advertising Law**

**(Cal. Bus. & Prof. Code § 17500, *et seq.*)**

**(On Behalf of Plaintiff Chen and the Purchaser Class Against Meta and MPT)**

191.    Plaintiff Chen incorporates by reference and re-alleges the allegations contained in the preceding paragraphs of this Complaint.

192.    Plaintiff Chen brings this cause of action individually and on behalf of all members of the Purchaser Class against Defendants Meta and MPT.

193.    Meta and MPT have made, and continue to make, untrue, false, deceptive, and/or misleading statements in connection with the privacy features of the Meta AI Glasses in public facing documents.

194.    Meta and MPT made, and continue to make, representations and statements (by omission and commission) that lead reasonable consumers to believe that users are in control of the

content collected by the Meta AI Glasses and that users are in control of who this content is shared with and that the Meta AI Glasses are designed for privacy. In reality, Meta has developed, maintained, and practiced the ability to intercept recordings from the Meta AI Glasses and to share those recordings with Sama and its employees.

195.    Plaintiff Chen and Purchaser Class members suffered an injury in fact as a result of Meta's unlawful, unfair, or fraudulent business practices.

196.    Meta's and MPT's acts and omissions are misleading and/or have a capacity, likelihood, or tendency to deceive or confuse the public.

197.    Plaintiff Chen relied, to her detriment, on Defendants' misleading and deceptive practices, including each of the misrepresentations and omissions set forth above. Had Plaintiff been adequately informed and not misled by Defendants, she would have acted differently.

198.    Meta's and MPT's acts and omissions are likely to deceive the general public.

199.    Upon information and belief, Meta's and MPT's advertisements, and the misrepresentations and omissions therein, are drafted in, emanate from, and are overseen by Meta's headquarters located in California.

200.    Meta and MPT engaged in the misleading and deceptive advertising and marketing practices set forth above to sell more Meta AI Glasses and increase its profits. Accordingly, Meta has engaged in false advertising, as defined and prohibited by §§ 17500, *et seq.* of the California Business and Professions Code.

201.    Plaintiff Chen seeks an injunction to prohibit Defendant Meta and MPT from continuing to engage in the misleading and deceptive advertising practices described herein. Unless and until Defendants are enjoined by an order of this Court, Defendants will continue to cause injury to the general public and violate the laws of California by continuing to deceptively advertise its privacy practices. Plaintiff also seeks restitution.

**COUNT VII**

**Violations of California Unfair Competition Law ("UCL"),**

**Cal. Bus. & Prof. Code §§ 17200, *et seq*.**

**(On Behalf of the Purchaser Class Against Meta, MPT, and Luxottica)**

202.    Plaintiff Chen incorporates by reference and re-allege the allegations contained in the preceding paragraphs of this Complaint.

203.    Plaintiff Chen brings this cause of action individually and on behalf of all members of the Purchaser Class against Defendants Meta, MPT, and Luxottica.

204.    Cal. Bus. & Prof Code §§ 17200, *et seq*. prohibits acts of "unfair competition," including any "unfair or fraudulent business act or practice."

205.    The acts and practices of Meta, MPT, and Luxottica as alleged herein constitute "unfair" business acts and practices under the UCL in that Meta, MPT, and Luxottica's conduct is unconscionable, immoral, deceptive, unfair, illegal, unethical, oppressive, and/or unscrupulous.

206.    Plaintiff Chen alleges that Meta, MPT, and Luxottica have, in the course of their business and the course of trade or commerce, undertaken and engaged in unfair business acts and practices under the UCL by, among other things, invading Plaintiff's and members of the Purchaser Class's privacy while falsely advertising that their privacy would be protected.

207.    Defendant Meta, MPT, and Luxottica's acts and practices are unfair because the gravity of the consequences of Defendants' conduct as described above outweighs any justification, motive, or reason, particularly considering that Defendants violated privacy while simultaneously advertising how it would protect privacy. Defendants' acts and practices are also immoral, unethical, unscrupulous, and offend established public policy and are substantially injurious to Plaintiff Chen and members of the Purchaser Class.

208.    The unfair business acts or practices described herein presented a threat and likelihood of harm and deception to Plaintiff Chen and members of the Purchaser Class in that Defendants Meta, MPT, and Luxottica have systematically perpetrated the unfair conduct upon members of the public by engaging in the conduct described herein.

Case 3:26-cv-02503-TSH   Document 1   Filed 03/23/26   Page 39 of 50

209. The acts of Defendants Meta, MPT, and Luxottica also constitute "fraudulent" business acts and practices under the UCL in that Defendants' conduct is false and has a tendency to deceive the general public. Defendant violated the fraudulent prong of the UCL by misleading Plaintiff Chen and members of the Purchaser Class to believe that the privacy of users and those in the vicinity of the Meta AI Glasses would be protected when recordings were made on the Meta AI Glasses.

210. Under the "unlawful" prong of the UCL, a violation of another law is treated as unfair competition and is independently actionable.

211. Defendants Meta, MPT, and Luxottica committed unlawful practices because they violated, *inter alia*, the ECPA, CIPA, CDAFA, SCA, CLRA, and/or FAL.

212. Defendants Meta, MPT, and Luxottica owed Plaintiff Chen and members of the Purchaser Class a duty to disclose the true information concerning the extent of recording conducted in the course of using Meta AI Glasses and concerning the disclosure of recordings generated using Meta AI Glasses to overseas third party human reviewers, including those employed by Defendant Sama, as well as a duty not to withhold material facts from Plaintiff Chen and members of the Purchaser Class that contradicted their representations.

213. Had Plaintiff Chen and members of the Purchaser Class been aware of the Meta, MPT, and Luxottica's conduct with respect to the recordings made by the Meta AI Glasses and/or the sharing of those recordings with third party human reviewers, including those employed by Defendant Sama, Plaintiff Chen and members of the Purchaser Class would not have purchased and/or used the Meta AI Glasses or would have done so on different terms.

214. The gravity of harm resulting from Meta, MPT, and Luxottica's unfair conduct outweighs any potential utility.

215. The harm from Meta, MPT, and Luxottica conduct was not reasonably avoidable by Plaintiff Chen  and members of the Purchaser Class because only Meta, MPT, and Luxottica were aware of the true facts concerning the extent of recording conducted in the course of using Meta AI Glasses and concerning the disclosure of recordings generated using Meta AI Glasses to third party

CLASS ACTION COMPLAINT
CASE NO. 26-cv-2503                                                                          37

human reviewers, including those employed by Defendant Sama, and Meta, MPT, and Luxottica did not disclose these facts, or did not sufficiently disclose them.

216.    Plaintiff Chen and members of the Purchaser Class have suffered injury in fact and have lost money in an amount to be determined at trial as a direct and proximate result of Meta, MPT, and Luxottica's business acts or practices.

217.    Under the UCL, Plaintiff Chen may enjoin these acts and practices and obtain restitution of all funds retained by Meta, MPT, and Luxottica by reason of and through the use of these acts and practices.

218.    Plaintiff Chen and members of the Purchaser Class accordingly seek appropriate relief under the UCL, including (i) restitution in full and disgorgement of all profits relating to the above-described unfair business acts or practices, and (ii) such orders or judgments as may be necessary to enjoin Defendants from continuing its unfair practices. Plaintiff and members of the Purchaser Class also seek reasonable attorneys' fees and costs under applicable law, including Cal. Civ. Proc. Code § 1021.5.

## COUNT VIII

### Intrusion Upon Seclusion

### (On Behalf of the Wearer Class and Household Member Class Against Meta, MPT, and Sama)

219.    Plaintiffs incorporate by reference and re-allege the allegations contained in the preceding paragraphs of this Complaint.

220.    Plaintiffs bring this cause of action individually and on behalf of members of the Wearer and Household Classes against Defendants Meta, MPT, and Sama.

221.    Intrusion upon seclusion has occurred when (i) Defendants Meta, MPT, and Sama intruded and/or aided, agreed with, employed, and/or conspired to intrude into a private place, conversation, matter; (ii) in a manner that was highly offensive to a reasonable person.

222.    Defendants Meta, MPT, and Sama intentionally intruded upon Plaintiffs' and members of the Wearer and Household Member Classes' solitude or seclusion when they generated

recordings of private communications, private spaces, and highly sensitive content, including, *inter alia*, nudity, sexual activity, bathroom visits, and bank cards, through the Meta AI Glasses.

223. Defendants Meta and MPT, intentionally intruded upon Plaintiffs' and members of the Wearer and Household Member Classes' solitude or seclusion when they disclosed such recordings, which were intended to stay private, to Sama and its employees.

224. Defendant Sama intentionally intruded upon Plaintiffs' and members of the Wearer and Household Member Classes' privacy when its employees reviewed recordings captured by Plaintiffs and members of the Wearer Class's Meta AI Glasses and/or containing audio and/or video recordings of Plaintiffs and members of the Wearer and Household Member Classes.

225. Plaintiff Kang and members of the Wearer Classes did not consent to or authorize, nor were they aware of (i) Defendants Meta and MPT's creation of audio and/or video recordings when individuals, including Plaintiff Kang and members of the Wearer Class, used their Meta AI Glasses, or were in the vicinity of their AI Glasses, but had not activated Meta AI; (ii) Defendants Meta and MPT's disclosure to Defendant Sama and its employees of recordings that they received from Plaintiff and members of the Wearer Class through the Meta AI Glasses; (iii) Defendants' use of such recordings to train Meta's AI platform; or (iv) Defendant Sama's practice of allowing overseas human reviewers to review such recordings.

226. Plaintiff Kang and members of the Wearer Class never agreed that Defendants Meta and MPT could generate recordings through the Meta AI Glasses, disclose their recordings to Defendant Sama or its employees, or use those recordings to train Meta's AI platform, nor did they agree that Sama or its employees could collect and review such recordings.

227. Plaintiff Chen and members of the Household Member Class never agreed that Defendants Meta and MPT could generate recordings of them, could disclose such recordings to Defendant Sama or its employees, use those recordings to train Meta's AI platform or that Defendant Sama or its employees could collect and review such recordings.

228. Plaintiffs and members of the Wearer and Household Member Classes had a reasonable expectation of privacy in the recordings captured by their Meta AI Glasses. Plaintiffs' and members of the Wearer and Household Member Classes' private affairs, private conversations,

private spaces, and highly sensitive content, including, *inter alia*, nudity, sexual activity, bathroom visits, and bank cards, were captured in these recordings.

229. Defendants Meta, MPT, and Sama intentionally intruded on and into Plaintiffs' and members of the Wearer and Household Member Classes' solitude, seclusion, or private affairs by (i) intercepting and recording private audio and video content through the Meta AI Glasses; (ii) transmitting those recordings—including recordings of private conversations, private spaces, and highly sensitive content, including, *inter alia*, nudity, sexual activity, bathroom visits, and bank cards—to Meta's cloud servers; (iii) further transmitting those recordings to Defendant Sama's overseas human reviewers, who viewed the recordings and annotated the data; and (iv) using the annotated data to train and refine Meta's AI models and enhance its advertising business.

230. Defendants Meta, MPT, and Sama's intentional intrusion into Plaintiffs' and members of the Wearer and Household Member Classes' seclusion via the Meta AI Glasses, was highly offensive to a reasonable person because Defendants surreptitiously recorded and transmitted recordings made with the Meta AI Glasses without informing or obtaining the consent of Plaintiffs and members of the Wearer and Household Member Classes while simultaneously advertising Meta AI Glasses as being "designed for privacy, controlled by you."

231. Defendants Meta, MPT, and Sama's intrusion is particularly offensive given that (i) recorded subjects include individuals who do not own Meta AI Glasses and who do not know they are being used in the vicinity; (ii) Defendants actively conceal the scope and nature of the human review of material recorded by Meta AI Glasses; and (iii) the intrusion is particularly invasive, with millions of Meta AI Glasses in use across the United States that are generating recordings.

232. Additionally, Defendants Meta, MPT, and Sama's intentional intrusion into Plaintiffs' and members of the Wearer and Household Member Classes' private conversations, private spaces, and highly sensitive content via the Meta AI Glasses was highly offensive to a reasonable person because it violated federal and state criminal and civil laws designed to protect individuals' privacy.

233. As a direct and proximate result of Defendants Meta, MPT, and Sama's actions, Plaintiffs and members of the Wearer and Household Member Classes have had their privacy interests

violated through the loss of control over highly personal information and sustained damages, and will continue to suffer damages.

234. Plaintiffs and members of the Wearer and Household Member Classes seek appropriate relief for that injury, including, but not limited to injunctive relief and damages that will reasonably compensate Plaintiffs and members of the Wearer and Household Member Classes for the harm to their privacy interests as well as a disgorgement of profits earned as a result of its intrusions upon Plaintiffs and members of the Wearer and Household Member Classes' privacy. Plaintiffs also seek punitive damages because Defendants Meta, MPT, and Sama's conduct was willful, knowing, and carried out with conscious disregard for Plaintiffs' and members of the Wearer and Household Member Classes' rights.

235. Plaintiffs also seek such other relief as the Court may deem just and proper.

**COUNT IX**

**Invasion of Privacy in Violation of Cal. Const. Art. I, § 1**

**(On behalf of the Wearer Class and Household Member Class Against Meta, MPT, and Sama)**

236. Plaintiffs incorporate by reference and re-allege the allegations contained in the preceding paragraphs of this Complaint.

237. Plaintiffs bring this cause of action individually and on behalf of all members of the Wearer and Household Member Classes against Defendants Meta, MPT, and Sama.

238. Article I, section 1 of the California Constitution provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." Cal. Cons. art. I, § 1.

239. The right to privacy in California's constitution creates a right of action against private entities such as Defendants Meta, MPT, and Sama.

240. To state a California constitutional privacy claim, a plaintiff must establish (i) a legally protected privacy interest; (ii) where the plaintiff had a reasonable expectation of privacy; and (iii)

CLASS ACTION COMPLAINT
CASE NO. 26-cv-2503                                                                                          41

conduct by the defendant constituting an intrusion of privacy so serious in nature, scope, and actual or potential impact as to constitute an egregious breach of the social norms.

241. Plaintiffs and members of the Wearer and Household Member Classes possess a legally protected interest in the recordings generated by Meta AI Glasses, and in providing such information is not disclosed to overseas third party human reviewers and/or used to train AI models. This legally-protected interest is derived from the common law, the California Constitution's article I, section 1 guarantee of the right to privacy, the ECPA, CIPA, CDAFA, and SCA.

242. Plaintiffs and members of the Wearer and Household Member Classes had a reasonable expectation of privacy in the recordings captured by their Meta AI Glasses. Plaintiffs' and members of the Wearer and Household Member Classes' private affairs, private conversations, private spaces, and highly sensitive content, including, *inter alia*, nudity, sexual activity, bathroom visits, and bank cards, were captured in these recordings.

243. Defendant Meta, MPT, and Sama's conduct constituted a serious invasion of privacy in that Defendants: (i) intercepted and recorded private audio and video content through the Meta AI Glasses; (ii) transmitted those recordings—including recordings of private conversations, private spaces, and highly sensitive content, including, *inter alia*, nudity, sexual activity, bathroom visits, and bank cards—to Meta's cloud servers; (iii) further transmitted those recordings to Defendant Sama's overseas human reviewers, who viewed the recordings and annotated the data; and (iv) used the annotated data to train and refine Meta's AI models and enhance its advertising business.

244. Defendant Meta, MPT, and Sama's intentional invasion of Plaintiffs' and members of the Wearer and Household Member Classes' privacy via the Meta AI Glasses, was an egregious violation of social norms because Defendants surreptitiously recorded and transmitted recordings made with the Meta AI Glasses without informing or obtaining the consent of Plaintiffs and members of the Wearer and Household Member Classes while simultaneously advertising Meta AI Glasses as being "designed for privacy, controlled by you."

245. Defendant Meta, MPT, and Sama's invasion of Plaintiffs' and members of the Wearer and Household Member Classes' privacy is an egregious violation of social norms given that (i) recorded subjects include individuals who do not own Meta AI Glasses and who do not know they

are being used in the vicinity; (ii) Defendants actively conceal the scope and nature of the human review of material recorded by Meta AI Glasses; and (iii) the intrusion is particularly invasive, with millions of Meta AI Glasses in use across the United States that are generating recordings

246. Defendant Meta, MPT, and Sama's invasion violated the privacy rights of millions of members of the Wearer and Household Member Classes, including Plaintiffs, without authorization or consent.

247. As a direct and proximate result of Defendant Meta, MPT, and Sama's actions, Plaintiffs and members of the Wearer and Household Member Classes have had their privacy invaded and sustained damages, and will continue to suffer damages.

248. As a direct and proximate result of Defendant Meta, MPT, and Sama's actions, Plaintiffs and members of the Wearer and Household Member Classes have had their privacy interests violated through the loss of control over highly personal information and sustained damages and will continue to suffer damages.

249. Plaintiffs and members of the Wearer and Household Member Classes seek appropriate relief for that injury, including, but not limited to, injunctive relief and damages that will reasonably compensate Plaintiffs and members of the Wearer and Household Member Classes for the harm to their privacy interests as well as a disgorgement of profits earned as a result of their intrusions upon Plaintiffs and members of the Wearer and Household Member Classes' privacy. Plaintiffs also seek punitive damages because Defendant Meta, MPT, and Sama's conduct was willful, knowing, and carried out with conscious disregard for Plaintiffs' and members of the Wearer and Household Member Classes' rights.

250. Plaintiffs also seek such other relief as the Court may deem just and proper.

**COUNT X**

**Negligence**

**(On Behalf of the Wearer Class and Household Member Class Against Luxottica of America, Inc.)**

251. Plaintiffs incorporate by reference and re-allege the allegations contained in the preceding paragraphs of this Complaint.

252. Plaintiffs bring this cause of action individually and on behalf of all members of the Wearer and Household Member Classes against Defendant Luxottica of America, Inc.

253. Generally, negligent conduct constitutes either acts "which a reasonable [person] should recognize as involving an unreasonable risk of causing an invasion of an interest of another, or . . . a failure to do an act which is necessary for the protection or assistance of another and which the actor is under a duty to do." Restatement (Second) of Torts § 284 (Am. Law Inst. 1965).

254. Courts also generally recognize that a defendant has engaged in negligent conduct where (1) defendant owed a duty; (2) defendant breached their duty; (3) the defendant's breach caused harm to the plaintiff; and (4) the plaintiff suffered damages and/or injury as a result of the breach.

255. Defendant Luxottica of America, Inc. acted in a manner that a reasonable person should recognize as invading the interests of another. In particular, Defendant Luxottica negligently designed, manufactured, and/or marketed the Meta AI Glasses such that they engage in "false wakes" whereby the Glasses record audio and visual content without the user of the Glasses, or other individuals in the vicinity of the Glasses, knowing that the recording is occurring. Defendant Luxottica also failed to warn of "false wakes" and the risks associated with use of the Meta AI Glasses.

256. As a direct and foreseeable result of these inadvertent "false wakes" and failure to warn, the Meta AI Glasses captured pictures, videos, and recordings from bother users of the Glasses and individuals in the vicinity of the Glasses—including, *inter alia*, nudity, sexual activity, bathroom visits, and bank cards.

257. These "false wakes" occurred without the knowledge or consent of both the Meta AI Glasses wearers and non-wearers captured in the pictures, videos, and recordings. Defendant Luxottica of America, Inc. knowingly and purposefully designed and manufactured the Meta AI Glasses to look much like non-wearable technology glasses it offers and failed to take steps to prevent the Glasses from capturing recordings without the knowledge of either users or non-users in the vicinity of the Glasses.

258. Defendant Luxottica of America, Inc. knew that the Meta AI Glasses would be marketed and sold to individual consumers and it was reasonably foreseeable that such consumers

would have the Meta AI Glasses both in public and private spaces, including the user's home, where individuals other than the user would reside. It was thus reasonably foreseeable that the "false wakes" would capture audio and video recordings in both public and private setting including in user's homes where individuals other than user's reside.

259.    Moreover, given their inconspicuous nature, it was reasonably foreseeable non-users would not know that the Meta AI Glasses were capturing audio and visual recordings. Further, given the negligent design and manufacturing of the Meta AI Glasses which rendered the device susceptible to frequent and inadvertent "false wakes," it was reasonably foreseeable that Plaintiffs' highly sensitive content would be captured from these private settings.

260.    Further, given Defendant Luxottica's partnership with Meta and MPT, Defendant Luxottica was aware that any content captured—inadvertent or otherwise—by the Meta AI Glasses it designed and manufactured would be fed to Meta's AI models.

261.    Notwithstanding, Defendant Luxottica failed to take reasonable care in designing, manufacturing and marketing the Meta AI Glasses in a manner so as to avoid inadvertent and frequent "false wakes" and/or failed to warn consumers, wearers, household members and the public regarding the "false wakes" and the risks associated with Meta AI Glasses.

262.    Additionally, Defendant Luxottica's marketing of the Meta AI Glasses did not disclose that the Glasses could exhibit "false wakes" and make and share recordings after these false wakes.

263.    Defendant Luxottica failed to warn Plaintiffs and Wearer and Household Class Member's that the Meta AI Glasses may engage in "false wakes" and that this would result in recordings of Plaintiffs' and Wearer and Household Class Member's communications being recorded without their knowledge.

264.    Defendant Luxottica's actions constituted a failure to act in a way which was necessary for the protection or assistance of another and which the actor is under a duty to do. Defendant Luxottica owed Plaintiffs and members of the Wearer and Household Member Classes a duty because, *inter alia*, Defendants failed to act as a reasonable person would under the circumstances, the harm to Plaintiffs was foreseeable, any social utility of Luxottica's conduct is

outweighed by the nature of the risk and foreseeability of harm, the magnitude of Luxottica's harm is significant, the nature of the risk taken by Luxottica's was serious, and there is a strong public policy in favor of preventing future harm caused by Luxottica's conduct.

265.    Defendant Luxottica breached, and continues to breach, the duties it owes to Plaintiffs and members of the Wearer and Household Member Classes through its affirmative business decisions and continued negligent design and manufacturing of the Meta AI Glasses such that they perform in the manner outlined above.

266.    As a direct and proximate result of Defendant Luxottica's actions, Plaintiffs and members of the Wearer and Household Member Classes have had their privacy invaded and sustained damages, and will continue to suffer damages.

267.    As a direct and proximate result of Defendant Luxottica's actions, Plaintiffs and members of the Wearer and Household Member Classes have had their privacy interests violated through the loss of control over highly personal information and sustained damages, and will continue to suffer damages.

### COUNT XI

### Unjust Enrichment

### (On Behalf of the Wearer Class, Household Member, and Purchaser Class Against All Defendants)

268.    Plaintiffs incorporate by reference and re-allege the allegations contained in the preceding paragraphs of this Complaint.

269.    Plaintiffs bring this cause of action individually and on behalf of all members of the Classes against all Defendants.

270.    To the extent required by law, this cause of action is alleged in the alternative to legal claims.

271.    As a result of their unjust conduct, Defendants have been unjustly enriched.

272.    Defendants received substantial benefits from Plaintiffs and members of the Classes in the form of their private audio, video, and electronic communications. Defendants acquired this data without adequate notice or consent and without providing corresponding compensation.

Defendants used their private data for their own commercial benefit, including: training and refining its AI models, improving its Meta AI assistant, enhancing advertising targeting capabilities, and increasing the value of their products and services.

273.   Defendants unjustly retained these benefits at the expense of Plaintiffs and members of the Classes.

274.   As a result of Defendants' conduct, it would be unjust and/or inequitable for Defendants to retain the benefits of their conduct without restitution to Plaintiffs and members of the Classes.

275.   Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiffs and members of the Classes is unjust and inequitable, Defendants have been unjustly enriched in an amount to be determined at trial.

**IX.   PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that this Court enter judgment against Defendants and in favor of Plaintiffs and members of the Classes, and enter an order:

a.   Certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiffs as the representatives of the Classes, and Plaintiffs' counsel as counsel for the Classes;

b.   Declaring that Defendants' conduct, as set forth above, violates the laws cited herein;

c.   Enjoining Defendants' unlawful conduct;

d.   Awarding damages, including nominal, actual, statutory, and punitive damages where applicable, to Plaintiffs and members of the Classes in an amount to be determined at trial;

e.   Awarding Plaintiffs and members of the Classes their reasonable litigation expenses, costs, and attorneys' fees;

f.   Declaring that Defendants are financially responsible for all Class notice and the administration of Class relief;

g.      Awarding Plaintiffs and members of the Classes pre- and post-judgment interest, to the extent allowable;

h.      An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

i.      Awarding such other further injunctive, equitable, and declaratory relief as necessary to protect the interests of Plaintiffs and members of the Classes; and

j.      Awarding such other or further relief as the Court may deem appropriate, just, and equitable.

## X.      DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

DATED: March 23, 2026                                    Respectfully submitted,

**KESSLER TOPAZ
  MELTZER & CHECK, LLP**

*/s/ Jennifer L. Joost*
Jennifer L. Joost (Bar No. 296164)
jjoost@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

-and–

Melissa L. Yeates (*pro hac vice* forthcoming)
myeates@ktmc.com
Tyler S. Graden (*pro hac vice* forthcoming)
tgraden@ktmc.com
Jordan E. Jacobson (Bar No. 302543)
jjacobson@ktmc.com
Daniel S. Dicce (*pro hac vice* forthcoming)
ddicce@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Counsel for Plaintiffs*